## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES WATTS, and** | : | **No. 3:10cv92** |
| **SHARON WATTS,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **ERIC HOLLOCK, and** | : | |
| **AYERS TOWING SERVICE, INC.** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court are motions in limine filed by Plaintiffs Charles and Sharon Watts and Defendants Eric Hollock and Ayers Towing Service, Inc. in advance of the trial scheduled for February 28, 2012. The court has already issued an order disposing of the motions. (See Doc. 84). This memorandum explains the court's reasoning.

**Background**

This case arises out of an accident that occurred on October 1, 2008. (Doc. 1, Compl. ¶ 5). On that day, Defendant Eric Hollock (hereinafter "Hollock") drove a flatbed trailer up a winding access road along Penobscot Mountain. (Id. ¶¶ 9-13). Hollock was hauling a 40,000-pound hoist to the top of the mountain. (Id.) The truck skid and became ensnared in the mud on the access road. (Id. ¶¶ 18-19). Plaintiff Charles Watts (hereinafter "Watts") was part of a crew of men sent to assist Hollock in freeing the stranded truck. (Id. ¶ 20).

As part of their plan to free the truck, the crew decided to attach a bulldozer to the front of the tractor-trailer and drag it from a jackknifed position to safety.  (Id. ¶ 25).  They also attached a forklift to the trailer to pull it away from the cliff as the bulldozer pulled the tractor forward.  (Id.)  Hollock was to sit in the truck's driver's seat to steer as the bulldozer and forklift pulled the trailer around.  (Id. ¶ 28).  He was not to place the truck in gear or attempt to accelerate the truck until the forklift and bulldozer had been detached.  (Id. ¶ 27).  Watts's job during this operation was to stand near the forklift as a spotter.  (Id. ¶ 29).  This operation put the truck in motion, but Hollock allegedly did not follow his assigned role.  (Id. ¶ 30).  Instead of waiting for the bulldozer and forklift to be detached from his truck, plaintiffs claim Hollock engaged the transmission and started to drive the truck forward.  (Id.)  When the truck gained traction the line attached to the bulldozer became slack, which caused the forklift to tip over and fall on top of Watts, causing "severe, permanent and catastrophic injuries."  (Id. ¶ 31).

After plaintiffs filed a lawsuit against Hollock and Ayers Towing Service, Hollock's employer, and served the complaint, the parties engaged in discovery.  At the close of discovery, and in anticipation of a trial, both parties filed motions in limine and defendants filed a motion to bifurcate the trial.  The court issued an order disposing of these motions.  (Doc. 84).  This memorandum explains the courts reasoning with respect to this order.

2

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiffs are residents of Texas.  (Doc 1, Compl. ¶ 1).  Defendant Eric Hollock is a citizen of Pennsylvania.  (Id. ¶ 2).  Defendant Ayers Towing Services is a Pennsylvania corporation with a principal place of business in Mountaintop, Pennsylvania.  (Id. ¶ 3).  Because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, the court has jurisdiction over the case.  See 28 U.S.C. § 1332.  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Discussion**

Plaintiffs filed four motions in limine.  Defendants filed three motions in limine and a motion to bifurcate the trial.  We will discuss all of the motions in turn beginning with plaintiffs' motions.

### 1.  Plaintiffs' motion to preclude all reference to or evidence regarding use of marijuana/opiates before October 1, 2008 and the exclusion of all drug screen testing (Doc. 34)

Discovery revealed that Watts smoked marijuana on the night before the accident.  When Watts arrived in the hospital after the accident, doctors ordered diagnostic studies, and those studies revealed the presence of opiates–specifically morphine–and THC, the chemical found in marijuana.  At his deposition, Watts

3

admitted he smoked marijuana the night before the incident, shortly before falling asleep sometime before midnight.  No evidence indicates that Watts had behaved in an incoherent or disoriented manner before the accident on October 1, 2008.  No eyewitnesses indicate that Watts appeared impaired by marijuana.[1]

Plaintiffs argue that any reference to Watts's marijuana use on the night before the accident and any test results that show the presence of marijuana or opiates in his bloodstream should be precluded.  They contend that evidence of prior drug use is irrelevant under Federal Rules of Evidence 401 and 402 because neither evidence that Watts smoked marijuana on the day of the accident nor evidence of impairment exists.  Plaintiffs further contend that, even if such evidence is relevant, its probative value is substantially outweighed by its prejudicial effect and should be precluded by Federal Rule of Evidence 403.

Defendants argue that the issues of Watts's perception of the accident and his reaction time–which could have been impaired as a result of drug use–are relevant to the facts at issue in this case.  Defendants do not offer any evidence to indicate, however, that Watts displayed evidence of intoxication.  Although evidence of prior drug use is somewhat relevant, the court agrees with plaintiffs that the probative value of the evidence is outweighed by its substantial prejudicial effect; as such the court granted this motion in limine.

---

[1]The parties do not appear to dispute that the opiates found in Watts's body by the drug screen were supplied to him after the accident.

4

The Federal Rules of Evidence deem evidence relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.  Unless it is otherwise excluded by a rule of evidence, relevant evidence is admissible.  FED. R. EVID. 402.  However, relevant evidence may be excluded by a district court "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."  FED. R. EVID. 403.

With respect to the admissibility of test results that demonstrate the use of intoxicants in cases involving accidents, Pennsylvania courts have held that "'[t]he well-settled law of this Commonwealth is that where recklessness or carelessness is at issue, proof of intoxication is relevant, but the mere fact of consuming alcohol is inadmissable as unfairly prejudicial, unless it reasonably establishes intoxication.'" Locke v. Claypool, 627 A.2d 801, 803 (Pa. Super. Ct. 1993) (quoting Whyte v. Robinson, 617 A.2d 380, 383 (Pa. Super. Ct. 1992)); see also Critzer v. Donovan, 137 A. 665, 666 (Pa. 1927) (precluding testimony that a driver's breath smelled of alcohol after an accident because "[t]here was no allegation or proof of intoxication, nor was there any evidence of conduct or appearance from which a reasonable inference could be drawn that the man was intoxicated").  Courts have come to this conclusion because "while proof of intoxication is relevant where reckless or careless driving of an automobile is the matter at issue, the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably

5

establishes a degree of intoxication which proves unfitness to drive." Fisher v. Dye,

125 A.2d 472, 476 (Pa. 1956) (citing Balla v. Sladek, 112 A.2d 156, 160 (Pa. 1955);

Landy v. Rosenstein, 188 A. 855, 858-59 (Pa. 1937); Critzer, 137 A. at 666).

Pennsylvania courts have applied the same rule discussed above to the

consumption of marijuana: "where it cannot be established that the use of marijuana

rendered a driver unfit to drive or impaired his or her ability to drive safely, the use of

marijuana is inadmissible to prove recklessness or carelessness." Hawthorne v.

Dravo Corp. Keystone Div., 508 A.2d 298, 303 (Pa. Super. Ct. 1986).  The standards

articulated in these Pennsylvania cases, based as they are on weighing the balance

between relevance and prejudice, apply in federal court and enlighten our Rule 403

analysis.  Rovegno v. Geppert Bros., Inc., 677 F.2d 327, 329 (3d Cir. 1982).

The court granted plaintiffs' motion as the unfair prejudice of the drug test

results substantially outweigh any probative value in the absence of some

corroborative evidence.  While Watts admitted that he smoked marijuana on the

night before the accident, discovery unearthed no evidence that he smoked

marijuana on that day.  More importantly, defendants offer no testimony or other

evidence that indicates Watts's prior drug consumption impaired him.  Thus

defendants present no supporting evidence that would permit admission of the

evidence of marijuana consumption, either in the form of testimony or test results.

See Locke, 627 A.2d at 803-4.

This case is similar to Pennington v. King, No. 07-4016, 2009 WL 415718

(E.D. Pa. Feb. 19, 2009).  In <u>King</u>, the plaintiffs sued the operator of a tractor trailer whose vehicle collided with the decedent's SUV.  <u>Id.</u> at *1.  They alleged that the defendant operated his vehicle while under the influence of marijuana, and was thus liable for negligence, recklessness and punitive damages.  <u>Id.</u>  The defendant spoke with law enforcement officials and an eyewitness after the accident, and no witnesses reported that the defendant exhibited any signs of intoxication or impairment.  <u>Id.</u> at *3.  Plaintiffs, however, produced the report of a toxicology expert who concluded that if the defendant showed signs of impairment while driving, his smoking of marijuana could be blamed for that impairment.  <u>Id.</u> at *2.  The court found plaintiffs had not produced sufficient evidence of intoxication because, in Pennsylvania, "for evidence of elevated blood alcohol to be admissible, it must be supplemented by other evidence of intoxicated behavior."  <u>Id.</u> at *4 (citing <u>Rovegno</u>, 677 F.2d at 330).  The only evidence of intoxication were "the results of the toxicology screen and [defendant's] admission that he smoked marijuana on the Saturday evening prior to this Monday morning accident."  <u>Id.</u> at *6.  While the defendant had been speeding and drove in an otherwise "erratic" fashion, that evidence was not sufficient "to introduce evidence of Mr. King's marijuana use at trial."  <u>Id.</u>  The court also rejected the expert report provided by plaintiffs, finding it "weak, speculative, and replete with qualifiers."  <u>Id.</u>  The report did "not assist Plaintiffs in their attempt to offer 'other evidence' of impairment."  <u>Id.</u>  The court therefore refused to consider defendant's prior marijuana use "and his alleged

resulting impairment."  Id.

Similarly, in the instant case, the probative value of Watts's drug screens is substantially outweighed by the prejudicial effect of admitting such evidence without any other evidence of intoxicated behavior.  Therefore, Federal Rule of Evidence 403 requires the exclusion of drug use prior to October 1, 2008.

### 2.  Plaintiffs' motion to exclude opinion testimony of defense expert Thomas Cocchiola (Doc. 51)

The court denied plaintiffs' motion in limine to preclude Thomas Cocchiola, one of defendants' experts.  Thomas Cocchiola is a professional engineer with twenty-four years of engineering consulting experience.  (Doc. 38-1, Ex. A, Cocchiola Report at 13-14).  In his report dated April 15, 2011, Cocchiola opines that Tower King II, Watts's employer, was the cause of the accident.  (Id. at 11-12). Cocchiola supports this opinion by citing Tower King II's violations of safety codes and industry standards, the failure of its employees to establish proper radio communication and the misuse of the forklift by a Tower King II employee.  (Id.)

Plaintiffs argue that Tower King II cannot be the superceding cause of the accident, as such, evidence of Tower King II's negligence will be confusing to the jury and unduly prejudicial.  In support of their position that Tower King II cannot be the superseding cause, plaintiffs cite Restatement (Second) of Torts Section 447,[2]

---

[2] Restatement (Second) of Torts Section 447 provides:
The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing

and assert that Tower King II reacted naturally to Hollock's negligence.  As it is plaintiffs' position that Tower King II's conduct was not "highly extraordinary" and was a foreseeable consequence of Hollock's acts, plaintiffs' contend that the opinion testimony offered by Thomas Cocchiola on Tower King II's negligence should be excluded under Federal Rule of Evidence 403.  Plaintiffs assert that Cocchiola "ignored" the facts of the case upon which plaintiffs rely, and plaintiffs argue that the OSHA and ANSI regulations relied upon by Cocchiola are irrelevant and inapplicable.

Defendants counter that Cocchiola developed his opinion after reviewing the facts of the case, and as a result, developed a different theory of causation than plaintiffs.  Defendants contend that developing a different theory when reviewing the same facts does not automatically translate into "ignoring" facts.  Furthermore, defendants proffer alleged violations of OSHA and ANSI regulations as evidence of the industry standard and that Tower King II deviated from this standard–creating a hazardous work environment.

───────────────────────

about, if
(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."
RESTATEMENT (SECOND) OF TORTS § 447.  See also Klein v. Raysinger, 470 A.2d 507, 512 (Pa. 1983) (noting that a second negligent actor is not a superseding cause if the second actor's conduct was not highly extraordinary).

The court agreed with defendants and denied plaintiffs' motion to preclude Thomas Cocchiola's testimony.  Cocchiola evaluated the facts unearthed in discovery and reached a different conclusion on causation than plaintiffs.  The court will not preclude this testimony because these differences are damaging to plaintiffs' case.  The law requires that relevant evidence only be excluded from going to the jury when the prejudice and confusion caused by that evidence **substantially** outweighs its probative value.  See FED. R. EVID. 403.  Whether Tower King II created a dangerous working environment, whether failures in communication contributed to the accident and whether employee misuse of the forklift caused the accident are highly relevant.[3]

To accept plaintiffs' argument that such evidence is not relevant because Tower King II cannot be the superseding cause of the accident, the court would be making a judgment on the merits with respect to causation.  Such a determination is delegated to the finder of fact and is not the proper subject of motions in limine.  See Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 773 n.4 (3d Cir. 2009) ("'[i]t is for a jury to determine whether an act is so extraordinary as to constitute a superseding cause.'" (quoting Feeney v. Disston Manor Pers. Care Home, Inc., 849 A.2d 590,

---

[3]  The standards established in workplace regulations are proper evidence of the standard of conduct that is deemed to be reasonable for that particular workplace.  See RESTATEMENT (SECOND) OF TORTS § 286; Birt v. Firstenergy Corp., 891 A.2d 1281, 1290-91 (Pa. Super. Ct. 2006) (holding that evidence of OSHA violations and industry standards is relevant and admissible on the issue of negligence).  Therefore, whether Tower King II complied with OSHA and ANSI regulations is evidence of due care, and whether it deviated from these standards is evidence of negligence.

595 (Pa. Super. Ct. 2004))).  Therefore the court denied plaintiffs' motion in limine to preclude Thomas Cocchiola's testimony.

### 3.  Plaintiffs' motion to exclude opinion testimony of defense expert Steven M. Schorr (Doc. 52)

The court denied plaintiffs' motion in limine to preclude Steven M. Schorr, one of defendants' experts, from stating certain opinions.  In his report, Schorr stated eight opinions.  (Doc. 38-3, Ex. C, Schorr Report at 5-6).  Schorr reached these opinions after conducting an accident reconstruction analysis, which included examining accident photographs, site inspections, review of eyewitness testimony and a simulation.  (Id. at 2-4).  Some of Schorr's opinions are in the form of comparisons between eyewitness testimony in the record and the results of his accident reconstruction.[4]

Plaintiffs argue in their motion in limine that Schorr's first, fourth, fifth, sixth and seventh opinions are not admissible under Federal Rule of Evidence 702.  Plaintiffs specifically contend that these opinions "are a transparent attempt to have Mr. Schorr provide an expert opinion on the credibility of the Plaintiff and other eyewitnesses . . . ."  (Doc. 52, Pls.' Second Mot. in Limine ¶ 5).

---

[4] Schorr's fourth and fifth opinions are examples of opinions in which Schorr compares the results of his reconstruction analysis and eyewitness testimony.  These opinions are as follows: "4. There is no physical evidence to establish that the tractor-trailer was in gear at the time it was being pulled forward by the bulldozer.  5. Mr. Watt's (sic) testimony that the tractor wheels were spinning and throwing mud is not consistent with the photographs taken at the scene."  (Doc. 38-3, Ex. C, Schorr Report at 6).  Both of these related conclusions were reached after Schorr's analysis of the materials and simulations referenced in his report.

11

Defendants respond that Schorr's opinions "are not mere statements challenging the credibility of the accounts of eyewitnesses, but are the opinions of a professional engineer applying his investigation and analysis to the facts of record in this case."  (Doc. 77, Mem. of Law in Supp. of Defs.' Response in Opp'n to Pls.' Mot. in Limine at 4).  Furthermore, defendants argue that the liberal standards of Rule 702 allow for the admission of Schorr's opinions, and defendants exclaim that Rule 704 allows for expert opinions on the ultimate issue.  The court agreed with defendants and denied plaintiffs' motion in limine.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.  When it comes to whether expert testimony should be admitted under Rule 702, the Third Circuit Court of Appeals has held that "'[h]elpfulness is the touchstone of Rule 702.'" Linkstrom v. Golden T. Farms, 883 F.2d 269, 270 (3d Cir. 1989) (quoting Breidor v. Sears, Roebuck & Co., 772 F.2d 1134, 1139 (3d Cir. 1983)).  "'[D]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough, aided by counsel, to ignore what is unhelpful in its deliberations.'"  Id. (quoting In re Japanese Elec.

Prods., 723 F.2d 238, 279 (3d Cir. 1983)).

In this case, plaintiffs do not attack Schorr's qualifications or scientific process, rather plaintiffs attack the conclusions he draws. Schorr's opinions are not mere comments on the credibility of eyewitness testimony, but the result of accident reconstruction analysis. This analysis produced results contrary to the eyewitness accounts of plaintiffs' witnesses. Schorr's opinions are not unhelpful to the jury simply because they highlight the contradictions between his accident reconstruction analysis and eyewitness testimony. Any weaknesses plaintiffs claim are present with Schorr's opinion are more appropriately the basis of cross-examination than grounds for exclusion.

The court does not agree with plaintiffs' assertion that Schorr's opinion somehow usurps the role of the jury. Federal Rule of Evidence 704 provides that expert testimony is "not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704. See also Forrest v. Beloit Corp., 424 F.3d 344, 353 (3d Cir. 2005) ("under FRE 704 an expert witness may offer testimony concerning the ultimate issue in the case"). Schorr's opinions are derivative of the methodology he employed in conducting his accident reconstruction analysis, as such, these opinions are admissible under the rules of evidence. They are admissible even if Schorr's opinions call into question the accounts of eyewitnesses, whose ultimate credibility is to be determined by the jury. For the reasons stated above, the court denied plaintiffs' motion in limine to exclude certain opinions of

Steven M. Schorr.

### 4.  Plaintiffs' motion to exclude opinion testimony in the supplemental expert report of Thomas Cocchiola (Doc. 53)

Plaintiffs, in a separate motion from their motion in limine to exclude Thomas Cocchiola's testimony in its entirety (Doc. 51), filed a motion in limine to exclude the opinions Cocchiola expressed in his supplemental report.  Cocchiola submitted his supplemental report in response to the 6/13/11 report submitted by plaintiffs' expert Michael Pepe.  (Doc. 53-1, Cocchiola Supplemental Report at 1).  Pepe's 6/13/11 report concluded that Hollock, in driving the tractor trailer up the muddy access road, caused of the accident.  (Doc. 48-1, Pepe Supplemental Report at 1-3).  Cocchiola issued a supplemental report on causation that rebutted this position.  Specifically, Cocchiola opined that OSHA regulations placed a duty in Tower King II to maintain a safe access road, that Tower King II should have conducted a Job Hazard Analysis, that Pepe's opinion of Hollock's driving ability was not sound and that the Tower King II forklift operator caused the accident.  (Doc. 53-1, Cocchiola Supplemental Report at 1-4).

Plaintiffs contend that Cocchiola is precluded by Federal Rule of Evidence 403 from expressing the opinions contained in his supplemental report.  Plaintiffs appear to base their Rule 403 preclusion argument on their belief that Cocchiola's opinions are somehow incorrect.  Plaintiffs challenge Cocchiola's application of OSHA regulations and charge Cocchiola with confusing the duty Tower King II owed to independent contractors as opposed to its employees.  Plaintiffs argue that

14

Cocchiola's testimony will be confusing to the jury and prejudicial because plaintiffs view Cocchiola's opinion to be incorrect.

Defendants counter that, under Pennsylvania law, employers are imposed with the duty to exercise reasonable care with respect to independent contractors when the employer controls those contractors. RESTATEMENT (SECOND) OF TORTS § 414; Farabaugh v. Pa. Tpk. Comm'n, 911 A.2d 1264, 1273-74 (Pa. 2006). Additionally, defendants clarified that the alleged OSHA violations are offered as evidence of the industry standard and therefore relevant in this case.

The court agreed with defendants. It is far from clear whether Cocchiola's conclusions are incorrect, and, as such, the court cannot declare his opinion to be incorrectly premised, overly prejudicial and confusing to the jury. Even if Cocchiola's opinions are flawed, such flaws are best vetted during cross-examination rather than as a means to exclude expert opinion in its entirety. Furthermore, as the court stated above, OSHA regulations can be admitted as evidence of the applicable standard of care. See RESTATEMENT (SECOND) OF TORTS § 286; Birt, 891 A.2d at 1290. For the reasons stated above, the court denied plaintiffs' motion in limine to preclude Cocchiola's opinions as violative of Federal Rule of Evidence 403.

**5. Defendants' motion to preclude plaintiffs' expert Michael Pepe (Doc. 54)**

In their first motion in limine, defendants sought to preclude Michael Pepe, plaintiffs' liability expert, from testifying. Pepe submitted two expert reports. In the first report, dated 12/21/10, Pepe, an accident reconstructionist, reviewed

eyewitness depositions, accident reports and accident photographs.  (Doc. 73-1, Ex.

1, Pepe Report at 2).  Pepe opined, based upon his analysis of this evidence, that a

number of factors caused the forklift to turn over.  (Id. at 1-2).  This conclusion

includes the following hypothetical possibility:

> If Mr. Hollock engaged his transmission and began to drive forward
> once he believed he had gained sufficient traction, the unexpected
> motion of the semi even over the distance of a few feet would be
> sufficient to cause the Gehl forklift to slide forward and tip, thereby
> causing the injury to Mr. Watts.  The forward motion of the semi was a
> causative factor in the tipping over of the forklift.

(Id. at 2).  Pepe's Supplemental Expert Report concluded that Hollock's decision to

proceed up the mountain on the access road caused the accident.  (See Doc. 73-1,

Ex. 2, Pepe Supplemental Report at 1-3).

Defendants contend that "Mr. Pepe's opinions are generalized observations at

best and, as such, does (sic) not rise to the level of expert opinion solely because it

was offered by someone with an academic pedigree."  (Doc. 54, Defs.' Mot. in

Limine Seeking to Preclude Pepe ¶ 72).  Defendants argue that Pepe's

methodology, or lack thereof, results in an opinion that is not reliable under the

standard established in Federal Rule of Evidence 702 and Daubert v. Merrell Dow

Pharmaceuticals, Inc., 509 U.S. 579 (1993).

Plaintiffs counter that Pepe is a qualified expert with an advanced engineering

degree and over thirty years of experience in dynamics and stress analysis.

Plaintiffs contend that Pepe's opinions are reliable because his investigation and

experience-based analysis of the evidence provides a sufficient basis for his opinion.

See Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 406 (3d Cir. 2003) (noting that expert theories are not required to gain general acceptance or be subject to peer review to be admissible under Rule 702).  Plaintiffs argue that "[t]here are no studies, literature or specific scientific tests that can be employed for the specific facts in the instant case."  (Doc. 73, Pls.' Mem. in Opp'n to Defs.' Mot. to Exclude Pepe at 5).

The court denied defendants motion to exclude Michael Pepe.  By failing to comply with the court's standing order, the record regarding the methodology Pepe employed is insufficiently developed.[5]  Defendants attack on Pepe is based on his methodology as gleaned from his two expert reports and the conclusions contained therein.  Similarly, plaintiffs' defense of Pepe's methodology is based solely in his reports.  As the defendants failed to comply with this courts order regarding Daubert challenges, the record contains nothing more than both parties' competing arguments on how Pepe developed his opinion, and this record is not sufficient to exclude expert testimony based on methodology.

Even if the court were to confine its review to the expert report, the court does not find Pepe's conditional opinion–if the tractor trailer moved forward, then that motion was sufficient to tip the forklift–objectionable.  Pepe has decades of

---

[5] We stated in a July 25, 2011 Order that "[i]f a Daubert expert witness issue arises, the party challenging the evidence is required to address the issue at time of deposing the witness.  If no deposition is provided, the complaining party must depose the witness so that a record will be made . . . ."  (Doc. 49, Order at 2).

experience, education and training and has conducted a review of the evidence.

Pepe's background qualifies him to respond to a hypothetical that is based on

Watts's eyewitness testimony–that the tractor moved forward.  Furthermore, given

the undeveloped record, the court finds that defendants contention that Pepe's

opinions are incorrect and not based in the facts are better suited for cross-

examination and argument.  As the Third Circuit Court of Appeals explained, it is not

the province of the district courts to ensure that expert methodology is perfect, only

that it is good.  See In re Paoli R.R. Yard Litig., 35 F.3d 717, 744 (3d Cir. 1994).

Thus, the court denied defendants motion to exclude Pepe.

### 6.  Defendants' motion to preclude certain references by plaintiffs' expert Beth Cohen, M.D. (Doc. 55)

In their second motion in limine, defendants seek to preclude plaintiffs' expert

witness Dr. Beth Cohen, M.D. from testifying about certain items discussed in her

pre-trial report.  Specifically, defendants contend that the "Medical History" section of

the report contains impermissible testimony.  This section provides a description of

the accident and its impact on the patient's life, as described by the patient.  (See

Doc. 55-2, Ex. A, Cohen Report at 2-3).

Defendants contend that Dr. Cohen should be prevented under Daubert and

Rule 702 from testifying about Watts's statements regarding the accident.

Defendants argue that Dr. Cohen should be precluded from mentioning the

accident's cause as she is not an engineer.  Defendants also contend that such

testimony would amount to unfair prejudice under Federal Rule of Evidence 403.

18

Plaintiffs counter that the "Medical History" section of the report does not contain an opinion by Dr. Cohen, but merely records what Watts related to her during the examination.  Plaintiffs argue that Dr. Cohen does not assert an opinion regarding the testimony, but only records the circumstances surrounding the accident.  Plaintiffs point out that the statements fall under the Federal Rule of Evidence 803(4) hearsay exception for statements made for the purpose of medical diagnosis and treatment.[6]

The court denied defendants' motion.  Defendants, in violation of our July 25, 2011 Order, attempted to advance a <u>Daubert</u> motion without first deposing the challenged expert.  Without a proper record, the court cannot determine whether the challenged portions of the "Medical History" of the report are opinions held by Dr. Cohen or background information intended to demonstrate an understanding of the underlying facts of the case.  From an examination of the report itself, it appears that the challenged section is intended to be background information that Dr. Cohen obtained from an interview with her patient and other sources.[7]  The court is confident that the jury will be able to understand that such background information is not a part of Dr. Cohen's medical opinion.  Furthermore, the court did not agree that

---

[6] Although plaintiffs address hearsay, defendants do not appear to raise hearsay as an issue; therefore, the court limits its analysis to the issue of whether the "Medical History" portion of the report is impermissible opinion testimony.

[7] Dr. Cohen states at the beginning of the "Medical History" section that "[t]he history is taken from the patient and chart notes that were kindly provided."  (Doc. 55-2, Ex. A, Cohen Report at 2).

Rule 403 required the exclusion of this evidence or that it merely represents an attempt to bolster plaintiffs' witnesses.  The probative value of the challenged testimony is high as it relates to Dr. Cohen's understanding of the underlying facts upon which her opinion is based.  Thus, for the above-stated reasons, the court denied defendants' motion to preclude certain opinions of Dr. Beth Cohen.

### 7.  Defendants' motion to exclude plaintiffs' medical bills (Doc. 56)

In their third motion in limine, defendants sought to preclude the admission of Watts's medical bills into evidence.  Defendants contend that Watts's medical bills should be precluded because "Plaintiffs' recovery, if any, must be limited to the amount actually paid or owing and . . . Plaintiffs' medical expenses must be reduced to reflect the actual amount paid by insurance and accepted by the medical providers and/or the amount of future medical expenses permitted under the [Pennsylvania Workers' Compensation] Act."  (Doc. 56, Mot. in Limine to Preclude Medical Bills at ¶ 15).

Plaintiffs respond that they only seek to recover the amount of past medical damages that were actually paid by the workers' compensation carrier and by plaintiffs in their personal capacity.[8]  Thus, plaintiffs contend defendants' argument has no basis as plaintiffs only seek to admit those bills that were actually paid.  With regard to reducing future medical costs, plaintiffs assert that the law and equitable

---

[8] Plaintiffs contend that, at the time the opposition brief was filed, that the workers' compensation carrier paid $181,790.71 in medical bills and that plaintiffs paid a total of $4,007.58, for a total amount of $185,798.29.

principles require that future damages not be reduced.

The court agreed with plaintiffs and denied defendants motion in limine.  It is well settled under Pennsylvania law that "'damages are to be compensatory to the full extent of the injury sustained,' and that actual compensation is given 'by graduating the amount of damages exactly to the extent of the loss.'"  Sonlin ex rel. Sonlin v. Abington Mem'l Hosp., 748 A.2d 213, 219 (Pa. Super. Ct. 2000) (quoting Kaczkowski v. Bolubasz, 421 A.2d 1027, 1029 (Pa. 1980)).  The Pennsylvania Supreme Court has clarified that damages for past medical expenses, although recoverable to the fullest extent of the injury sustained, are nonetheless limited to those expenses that "'have been actually paid, or such as, in the judgment of the jury, are reasonably necessary to be incurred.'"  Moorhead v. Crozer Chester Med. Ctr., 765 A.2d 786, 789 (Pa. 2001) (quoting Goodhart v. Pa. R.R. Co., 35 A. 191, 192 (Pa. 1896)).

In Moorhead, the plaintiff claimed $108,668.31 in past healthcare expenses, but the healthcare provider accepted only $12,160.40 from Medicare and Blue Cross as full payment for the plaintiff's bill.  Id. at 788.  The Pennsylvania Supreme Court held that the plaintiff could not recover "illusory" ($108,668.31) past medical expenses, as the amount paid by the plaintiff and the collateral sources ($12,160.40) was far less.  Id. at 791.  In the instant case, with respect to the past medical expenses, the court ruled that Watts's medical bills are admissible as plaintiffs assert claims for only those medical expenses that have been actually paid.

21

With respect to future medical expense damages, the court disagreed with defendants' assertion that <u>Moorhead</u> and the Pennsylvania Workers' Compensation Act require the exclusion of plaintiffs' medical bills or that plaintiffs' future medical expenses be reduced.[9]   Other district courts have similarly rejected attempts to limit future medical expenses based on current insurance contribution rates.  <u>See e.g., Pa. Trust Co. v. Dorel Juvenile Grp., Inc.</u>, No. 07-4029, 2011 WL 3740472, at *12 (E.D. Pa. Aug. 25, 2011) (holding "that <u>Moorhead</u> does not automatically preclude parties from offering evidence of future damages beyond Medicaid reimbursement rates").

Furthermore, the precise amount of future medical expenses are inherently speculative.  <u>See</u> <u>Pratt v. Stein</u>, 444 A.2d 674, 697 (Pa. Super. Ct. 1982) (citing <u>Rogers v. Phila. & Reading Ry. Co.</u>, 106 A. 734, 736 (Pa. 1919)).  Defendants can guarantee neither the exact cost of Watts's future medical treatments nor the amount of any potential offsets.  Fairness and public policy dictate that the burden of any risk regarding future medical costs or changes in insurance contribution rates should fall on the defendants not the plaintiffs.  For the above-stated reasons, the court denied defendants' motion in limine to preclude Watts's medical bills or to limit

---

[9] The <u>Moorhead</u> decision does not preclude parties from introducing evidence of future medical expenses beyond those amounts presently paid by insurance carriers as that decision dealt with past medical damages that the plaintiff would never incur. <u>Moorhead</u>, 765 A.2d at 790.  The Workers' Compensation provisions cited by defendant are not on point when it comes to reducing awards in tort for future medical expenses.  <u>See</u> 77 PA. STAT. ANN. §71 (governing offsets the Workers' Compensation carrier is entitled); 77 PA. STAT. ANN. § 531(3)(i-iv) (governing the fee caps and fee schedule for the workers' compensation medical expenses).

the amount of future medical expense damages.

### 8. Defendants' motion to bifurcate the trial (Doc. 57)

Defendants also filed a motion to bifurcate the trial into liability and damages

portions.  Defendants argue that their ability to receive a fair and unbiased verdict on

liability will be unduly and unfairly prejudiced if plaintiffs are permitted to present their

evidence on Watts's significant injuries at the same time as they present evidence of

liability.

Rule 42 of the Federal Rules of Civil Procedure provides for bifurcated trials

as follows:

> For convenience, to avoid prejudice, or to expedite and economize, the
> court may order a separate trial of one or more separate issues, claims,
> crossclaims, counterclaims, or third-party claims.

FED. R. CIV. P. 42(b).  Every civil trial contains questions of liability and damages,

and the decision whether to bifurcate the trial must be based on the particular facts

of the case.  See Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978).  The

decision to bifurcate is left in the trial court's discretion and must be decided on a

case-by-case basis.  Idzojtic v. Pa. R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1972).  In

exercising such discretion, the court "must weigh the various considerations of

convenience, prejudice to the parties, expedition and economy of resources."

Emerick v. U.S. Suzuku Motor Corp., 750 F.2d 19, 22 (3d Cir. 1984).  The moving

party bears the burden of establishing that bifurcation is appropriate.  Innovative

Office Prods., Inc. v. Spaceco, Inc., No. 50-04037, 2006 WL 1340865 at *1 (E.D. Pa.

May 15, 2006) (citing <u>Spectra-Physics Lasers, Inc. v. Uniphase Corp.</u>, 144 F.R.D.

99, 101 (N.D. Cal. 1992).

We denied defendants' request to bifurcate the trial.  Defendants' argument

rests largely on their contention that plaintiffs can only prevail if they establish that

defendants behaved recklessly; thus, introducing evidence of damages would

confuse the jury when they reach their liability determination on the heightened

standard of recklessness.  Defendants also argue that plaintiffs' damages experts

would be prejudicial to defendants theories regarding liability.  Despite these

arguments, we find that the benefits derived from bifurcating the trial would be vastly

outweighed by the waste of time and resources inherent in holding two trials.

At issue in this case is whether the jury will be able to differentiate between

damages and liability issues and the expert witnesses that will testify on these

issues.  This case is not hopelessly complex.  As such, the jury will be able to fairly

perform its role in determining liability and damages.  Additionally, the court is not

convinced that the serious nature of the damages will cause defendants prejudice.

To accept such a position would require every seriously injured plaintiff to prosecute

his claim in two trials.  The court does not accept the position that every plaintiff with

evidence of a severe injury creates unfair prejudice and prohibits fair trials.

Furthermore, bifurcating the trial will place an additional burden on plaintiffs, who

reside in Texas.

The court is confident that it can construct a jury charge and a verdict slip that

will prevent prejudice to defendants.  The court presumes that a jury follows

instructions, even in difficult cases, and finds that proper instructions will prevent any

prejudicial confusion.  See, e.g., Thaubalt v. Chait, 541 F.3d 512, 530-31 (3d Cir.

2008) (upholding the decision not to bifurcate the trial in part because the court's jury

instructions prevented prejudice against the defendant).  For the above-stated

reasons, the court denied defendants' motion to bifurcate the trial.

**Conclusion**

For the reasons stated above, we granted plaintiffs' motion in limine to exclude

evidence of prior drug use (Doc. 34) and denied all of the other pre-trial motions

(Docs. 51, 52, 53, 54, 55, 56, 57) in our Order dated August 30, 2011 (Doc. 84).


Date: December 5, 2011

                                                    **BY THE COURT**


                                                    **s/ James M. Munley**
                                                    **JUDGE JAMES M. MUNLEY**
                                                    **United States District Court**